**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

NANCY EVERTZ,

Plaintiff,

v.

ASPEN MEDICAL GROUP,

Defendant.

Civil No. 00-197 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Charles L. Friedman, FRIEDMAN LAW OFFICE, 4000 Aldrich Avenue South, No. 1, Minneapolis, MN, 55409, for plaintiff.

Megan L. Anderson and Judith Bevis Langevin, GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A., 3400 City Center, 33 South Sixth Street, Minneapolis, MN, 55402, for defendant.

Plaintiff brings this action against her former employer, Aspen Medical Group ("Aspen"), for misrepresentation and violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Plaintiff claims that Aspen made misrepresentations to her concerning her job security and expectation of severance benefits. Plaintiff also claims she was denied pension benefits in violation of ERISA during a four-year joint venture between Aspen and Blue Cross Blue Shield of Minnesota ("BCBSM"). This matter is now before the Court on defendant's motion for summary judgment.

FILED MAR 1 3 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

## BACKGROUND

On September 8, 1986, plaintiff began working for Aspen as Director of Finance. Aspen, a Minnesota non-profit corporation, employs physicians and support staff for the purpose of providing medical diagnosis and treatment in multi-specialty clinic settings. Over the years, plaintiff was promoted to Vice-President of Finance and then Senior Vice-President of Finance.

In July 1994, Aspen and BCBSM entered into a joint venture agreement to form a separate non-profit corporation called Aspen Plus Health Network ("APHN"). APHN was formed for the stated purpose of creating an integrated service network for the efficient delivery of health care services through integration of administrative and medical services.

As part of the joint venture, Aspen, BCBSM and APHN entered into a series of agreements. First, Aspen and BCBSM entered into an Intangible Asset Purchase Agreement in which Aspen sold its administrative workforce, including plaintiff, to BCBSM. As a "transferred employee" of BCBSM, plaintiff's salary and benefits were paid by BCBSM. After purchasing Aspen's administrative staff, BCBSM entered into an Administrative Services Agreement with APHN. Under this agreement, BCBSM agreed to provide the administrative and support services it purchased from Aspen to staff APHN. Finally, APHN entered into a Clinic Management Services Agreement with Aspen, in which Aspen contracted for APHN's administrative services, including plaintiff.

According to Aspen, plaintiff was a BCBSM employee on assignment to provide services to APHN and Aspen during this joint venture period of October 1, 1994 through

December 31, 1998. Plaintiff claims that the agreements created only a fictional transfer of plaintiff's employment status and that, in actuality, plaintiff remained an Aspen employee during this time period.

In 1997, Aspen entered into merger negotiations with Fairview Health Systems. It was contemplated that should the merger occur, plaintiff and other current BCBSM employees would become Aspen employees. In an effort to provide some assurances of income security in the event such a transition took place, Aspen entered into retention agreements with several employees, including plaintiff. This agreement provided that if plaintiff was terminated as a result of the merger, Aspen would make a lump sum severance payment to plaintiff in an amount equal to three times her salary within 90 days of her termination. The merger, however, never took place and plaintiff never became eligible for the benefits under the agreement.

In July 1998, as the joint venture between Aspen and BCBSM was unwinding,[1] Aspen's executive committee expressed dissatisfaction with plaintiff's performance and decided to terminate plaintiff. The executive committee directed then Aspen CEO William Riley ("Riley") to terminate plaintiff, however, Riley failed to do so prior to his resignation announcement in August 1998. As a result of Riley's resignation, the executive committee decided not to terminate plaintiff.

Dr. Peggy Naas ("Naas") became acting CEO during the interim period between Riley's departure and Aspen's search for a new CEO. During this time, plaintiff

[1] The joint venture was scheduled to terminate on December 31, 1998.

discussed with Naas on several occasions her concern that her position might be terminated by the incoming CEO. Plaintiff's concerns were two-fold. On the one hand, she wanted assurances that her job was secure, on the other, she wanted some guarantee of severance pay should her employment be terminated by the new CEO.

The record reflects that in response to plaintiff's job security concerns, Naas told plaintiff "she was a valuable asset" to Aspen and that "she was doing a good job." Plaintiff claims these statements amount to affirmative representations that plaintiff's job was secure, a statement that Naas clearly knew was false given the executive committee's previous decision to terminate plaintiff's employment.

In November/December 1998, plaintiff received a letter agreement from Naas which, if accepted, would provide plaintiff with eight months of severance pay in the event her employment was terminated during this interim period. Plaintiff found the offer inadequate and refused to sign the agreement. According to plaintiff, she entered into further discussions with Naas concerning an appropriate severance package and told Naas she wanted severance benefits similar to or comparable with the Fairview Retention Agreement.[2]

On May 1, 1999, Aspen hired its new CEO, Thomas Holets ("Holets"). Shortly thereafter, Holets learned of the executive committee decision to terminate plaintiff in July 1998. According to Naas, however, the committee told Holets to make his own

[2] Plaintiff's deposition testimony indicates that plaintiff also discussed with Naas a severance package given to a former Aspen employee, Jill Lord.

decision whether to retain plaintiff. On May 20, 1999, Aspen terminated plaintiff's employment.

## ANALYSIS

### I. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party. *See Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.*, 824 F.2d 582, 585 (8th Cir. 1987). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### II. Fraudulent Misrepresentation

Under Minnesota law, plaintiff's burden to establish a misrepresentation claim is high. *See Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000) ("Our case law establishes a high threshold of proof for a [fraud] claim."). To prove misrepresentation, plaintiff must demonstrate that: 1) Aspen made a false representation of past or present material fact that is susceptible to knowledge; 2) Aspen either knew the

representation was false or asserted it as true without knowing it was true or false; 3) Aspen intended plaintiff to act on the false representation; 4) plaintiff did, in fact, act in justifiable reliance on the false misrepresentation; and 5) plaintiff suffered damages as a proximate cause of the representation. *Piekarski v. Home Owners Sav. Bank,* 956 F.2d 1484, 1493 (8th Cir. 1992); *see also Florenzano v. Olson,* 387 N.W.2d 168, 174 n.4 (Minn. 1986*).* For the reasons provided below, the Court finds that plaintiff's misrepresentation fails as a matter of law.

**A. Job Security Representations**

Plaintiff claims Naas made false representations of past and present fact in direct response to plaintiff's concerns that her employment might be terminated by the incoming CEO. Specifically, plaintiff alleges that Naas assured plaintiff that her job was secure and that she was a valuable asset to Aspen. According to plaintiff, these statements were false because Naas knew at the time she made the statements that the executive committee had unanimously agreed to terminate her. Plaintiff thus alleges that Naas intentionally misled plaintiff into believing her job was secure as inducement to retain plaintiff and take advantage of her services and experience during Aspen's transition period.

Aspen maintains that although plaintiff has generally alleged in her pleadings and throughout discovery that Naas assured plaintiff that her employment was secure, plaintiff's own deposition testimony reveals no such representation by Naas. At most, the record reveals that Naas assured plaintiff that "she was a valuable asset to Aspen" and

that plaintiff "was doing a good job." According to defendants, these statements are statements of opinions, not fact. Moreover, to the extent Naas' comments can be construed as factual job security statements, they are representations of future fact, not past or present fact, and therefore fail as a matter of law.

As an initial matter, the Court agrees with Aspen that the factual record contains no affirmative representation by Naas that "her job was secure" beyond the transition period and Aspen's hiring of a new CEO. However, Naas did tell plaintiff she "was a valuable asset to Aspen" and that she "was doing a good job" in direct response to plaintiff's job security concerns. The Court is troubled by these representations, particularly in light of the context in which they were made. For instance, Naas' statement to plaintiff that "she was doing a good job" is arguably false, given the executive committee's determination that plaintiff should be terminated because of her poor performance. Although the committee later decided to retain plaintiff, the record indicates that they did so only because of Riley's resignation and not because plaintiff's performance had improved.

However, the statements themselves are more akin to opinions, than statements of fact and on this basis are not actionable in fraud. *See Martens,* 616 N.W.2d at 746 (neither opinions nor statements that are "general and indefinite" are representations of fact giving rise to a misrepresentation claim); *Ruud v. Great Plains Supply, Inc.,* 1993 WL 488591 at *4 (Minn. Ct. App.) *rev'd on other grounds,* 526 N.W.2d 369, 373 (Minn. 1995) (employer's statement to employee in response to employee's job security concerns that "he is a good employee" is merely an opinion, not a statement of fact).

Even if the Court could find a factual dispute regarding whether Naas intentionally made false representations of fact in response to plaintiff's job security concerns, plaintiff's misrepresentation claim nevertheless fails because plaintiff cannot establish the final two elements of her claim. As previously mentioned, plaintiff must demonstrate that she acted in justifiable reliance on the representation and that she suffered damages as a proximate result of the representation. *See Florenzano*, 387N.W.2d at 174.

It is well-established that an at-will employee who merely continues to work and does not demonstrate to have turned down other offers of employment based on an employer's representation is legally insufficient to show reliance. *See Piekarski*, 956 F.2d at 1494 (finding no reliance where plaintiff "did not decline pending job offers or pass up a concrete opportunity to look for other jobs"); *Hanks v. Hubbard Broad. Inc.*, 493 N.W.2d 302, 309 (Minn. Ct. App. 1993) (recognizing that no reliance will be found where "an at-will employee merely continues to work and does not claim to have turned down any offers of employment based upon an employer's representations"); *Mudlitz v. Mutual Serv. Ins. Cos.*, 75 F.3d 391, 395 (8th Cir. 1996) (same).

The factual record does not contain any evidence that plaintiff turned down any job offers or concrete job opportunities in reliance on Aspen's representations. Plaintiff's claim that she received calls from various headhunters but declined to return their

messages or pursue any opportunities they might have discussed with her is insufficient, as a matter of law, to demonstrate reliance or damages.[3]

**B. Severance Pay Representations**

Plaintiff's misrepresentation claim regarding severance benefits also fails. As an initial matter, contrary to plaintiff counsel's representations at oral argument, the factual record contains no evidence that Naas ever affirmatively promised plaintiff three years severance pay in the event of her termination by the new CEO. Rather, the record reveals that in response to plaintiff's request for a severance package modeled after or comparable to the Fairview Retention Agreement, Naas agreed to "look into it." When plaintiff approached Naas in subsequent conversations about the status of her request, Naas assured plaintiff that "she was working on it."

The Court finds these statements too vague and indefinite to support a misrepresentation claim for severance benefits. *See Swedeen v. Swedeen,* 134 N.W.2d 871, 875 (Minn. 1965) (general and indefinite representations insufficient to demonstrate actual misrepresentation of fact); *Martens,* 616 N.W.2d at 747 (same). Additionally, plaintiff's deposition testimony reveals that Naas also agreed to look into the Jill Lord severance agreement, which had different terms than the Fairview agreement. Therefore,

---

[3] Plaintiff's reliance on Naas' representations also fails because of her at-will employment status. As a general rule, at-will employees cannot reasonably rely on job security statements made by their employers. *See, e.g., Martin v. American Family Mut. Ins. Co.*, 157 F.3d 580, 582 (8th Cir. 1998) (finding agents reliance on management official's oral representation that plaintiffs would have "lifelong careers" unreasonable as a matter of law where agency contract unambiguously defined employment status as at-will).

it is unclear which agreement or terms Naas was agreeing "to look into" or "was working on." Finally, even if plaintiff could establish an affirmative promise by Naas for three years severance pay, plaintiff cannot establish the reliance or damage elements of her claim for the same reasons discussed above.

**C. Misrepresentation by Omission**

Plaintiff claims this case involves as much a misrepresentation by omission as a misrepresentation by commission. Specifically, plaintiff maintains that Aspen is liable for failing to tell plaintiff that the executive committee had decided to terminate her employment in July 1998. However, unless plaintiff demonstrates that Aspen owed plaintiff a duty to disclose this information, plaintiff's misrepresentation by omission claim fails as a matter of law. *Stowman v. Carlson Cos.*, 430 N.W.2d 490, 493 (Minn. Ct. App. 1988).

*Piekarski v. Home Owners Savings Bank,* 956 F.2d 1484 (8th Cir. 1992), is directly on point. In *Piekarski*, the Eighth Circuit Court of Appeals held that an employer has no duty to disclose to an at-will employee that he is recording complaints in the employee's personnel file, even where the employee specifically inquires into his job security. *Id.* at 1495.

The Court is not persuaded by plaintiff's unsubstantiated assertion that Aspen owed a duty of disclosure because an employer and employee stand in a relationship of confidence and loyalty. As courts have previously held, to impose such a duty of disclosure on employers would eviscerate the at-will employment doctrine. *Piekerski,*

956 F.2d at 1495 ("It would be incongruous to give employers the right to fire an at-will employee without warning, but to require employers to tell an employee every time they placed a note in his or her personnel file."); *Hurley v. TCF Banking & Sav.*, 414 N.W.2d 584, 587-88 (Minn. Ct. App. 1987) ("An employer has no duty to disclose to an employee that he has placed items in his file"); *Stowman v. Carlson Co.*, 430 N.W.2d 490, 493 (Minn. Ct. App. 1988). Plaintiff's misrepresentation by omission claim thus fails.

## III. ERISA

Plaintiff claims that Aspen violated ERISA by failing to pay her pension benefits during its four-year joint venture with BCBSM.[4] Specifically, plaintiff claims that she remained an Aspen employee during this period despite the joint venture agreements stating otherwise. As such, she is entitled to the same pension benefits as any other Aspen employee.

Aspen claims that whether plaintiff was a BCBSM or Aspen employee during this four-year period is irrelevant because plaintiff's ERISA claim is time-barred by the two-year statute of limitations. Aspen, however, raises this argument for the first time in its reply memorandum in support of its motion for summary judgment. Consequently, aside

---

[4] According to defendant's memorandum of law in support of its motion for summary judgment, plaintiff also claims that defendant violated ERISA by failing to pay plaintiff severance benefits upon her termination on May 20, 1999. Defendant claims that plaintiff fails to state an ERISA claim for severance pay because she has failed to establish that defendant had an established ERISA plan for providing such benefits. At oral argument, plaintiff's counsel informed the Court that he is not challenging this portion of her ERISA claim. Accordingly, the Court finds that plaintiff's ERISA claim for severance benefits fails as a matter of law.

from the brief time allotted at oral argument, plaintiff has not received an adequate opportunity to respond to Aspen's affirmative defense. Thus, in the interests of fairness, the Court holds its ruling on plaintiff's ERISA claim for pension benefits in abeyance until plaintiff has had an opportunity to respond to Aspen's statute of limitations defense.

## ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 45] is **GRANTED in part**:

1. Plaintiff's misrepresentation claim as stated in Count 1 of the complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE.**

2. Plaintiff shall have **twenty (20) days** from the date of this Order to respond to defendant's statute of limitations defense raised in its reply memorandum of law in support of defendant's motion for summary judgment [Docket No. 51]. Defendant shall have **seven (7) days** from the receipt of plaintiff's response brief to file a reply with the Court.

DATED: March 14, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge