**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

NANCY EVERTZ,

Plaintiff,

v.

ASPEN MEDICAL GROUP,

Defendant.

Civil No. 00-197 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Charles L. Friedman, FRIEDMAN LAW OFFICE, 4000 Aldrich Avenue South, No. 1, Minneapolis, MN, 55409, for plaintiff.

Megan L. Anderson and Judith Bevis Langevin, GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A., 3400 City Center, 33 South Sixth Street, Minneapolis, MN, 55402, for defendant.

Plaintiff brings this action against her former employer, Aspen Medical Group ("Aspen"), for misrepresentation and for violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.* On March 14, 2001, the Court granted Aspen's motion for summary judgment as to plaintiff's misrepresentation claim. Although Aspen also moved for summary judgment as to plaintiff's ERISA claim on the basis that her claim is barred by the statute of limitations, the Court declined to rule on the issue until plaintiff had an opportunity to respond to this claim, which Aspen raised

FILED SEP 17 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. SEP 17 2001
DEPUTY CLERK

for the first time in its reply memorandum.[1] Having received and reviewed the supplemental briefing requested by the Court in its March 14, 2001 Order, the Court finds that plaintiff's ERISA claim is barred by the two-year statute of limitations.

## BACKGROUND

Plaintiff's ERISA claim arises out of pension losses she claims she suffered during the joint venture between Aspen and Blue Cross Blue Shield of Minnesota ("BCBSM") from October 1, 1994, through December 31, 1998.[2] Specifically, plaintiff alleges that she was an Aspen common law employee rather than a BCBSM employee during the four-year joint venture and thus, she is entitled to be credited for those years of service and recover lost benefits under Aspen's more generous pension plans.[3]

---

[1] Aspen moved for leave to amend its answer to add the statute of limitations defense after it served its motion for summary judgment on plaintiff but before it served its reply brief. At the motion hearing before Chief United States Magistrate Judge Franklin L. Noel, plaintiff did not oppose Aspen's motion for leave to amend and the Magistrate Judge accordingly denied Aspen's motion as moot. Aspen then filed its amended answer and raised the statute of limitations claim in its reply memorandum.

[2] The Court's March 14, 2001 Order provides a complete recitation of the facts.

[3] Plaintiff's attempt to re-characterize her ERISA claim as a claim for future benefits in her supplemental memorandum is unpersuasive. Her claim that Aspen should add "make-up contributions" or "credit" her 401K Plan account for the joint venture years is premised upon Aspen's past decision in 1994 to classify plaintiff as a BCBSM employee for payroll and benefit purposes. Indeed, plaintiff herself has consistently asserted her claim as one for lost pension benefits during the joint venture. *See* Complaint ¶ 33 ("Because plaintiff did not remain on the payroll of Defendant Aspen from October 1, 1994 through December 31, 1998, plaintiff's lost pension benefits are approximately two hundred thousand dollars ($200,000)"; *see also* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 2 ("Plaintiff suffered lost benefits"); *id.* at 16 ("Aspen states that it is entitled to summary judgment on Plaintiff Evertz claim for lost pension benefits"); *id.* at 20 ("she is entitled to the same pension benefits that employees who were not 'transferred' received").

## ANALYSIS

ERISA does not contain its own statute of limitations period, but rather borrows its statute of limitations from the most analogous law of the forum state, in this case, Minn. Stat. § 541.07, which provides for a two-year statute of limitations in contract actions for unpaid benefits. *Adamson v. Armco, Inc.*, 44 F.3d 650, 652-53 (8th Cir. 1995).

Although courts look to state law to determine the applicable statute of limitations period, federal common law controls the question of claim accrual. *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 838 (8th Cir. 1998). As a general rule, an ERISA cause of action accrues "after a claim for benefits has been made and formally denied." *Union Pacific R.R. Co. v. Beckham,* 138 F.3d 325, 330 (8th Cir. 1998). "Nonetheless, and still consistent with the discovery rule, an ERISA beneficiary's cause of action accrues before a formal denial, and even before a claim for benefits is filed, 'when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary.'" *Id.* (quoting *Miles v. New York State Teamsters Conf. Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)); *Bennett*, 141 F.3d at 839; *Kienle v. Hunter Eng'g Co.*, 24 F. Supp. 2d 1004, 1006 (E.D. Mo. 1998).

Aspen argues that plaintiff knew, clearly and unequivocally, as of October 1, 1994, of Aspen's decision to consider her a BCBSM employee during the joint venture period and that she would receive her salary and 401K and pension benefits from BCBSM rather than Aspen. Because that decision was made and clearly communicated to plaintiff as of October 1994, her claim accrued at that time. As such, any ERISA claim for benefits by plaintiff expired on October 1, 1996. Plaintiff, did not, however,

commence this action until January 6, 2000, more than three years after the two-year limitations period expired.

Upon review of the record, the Court agrees with Aspen that plaintiff's ERISA claim accrued in October 1994. Plaintiff's own deposition testimony reveals that plaintiff knew at the start of the joint venture that she would be a BCBSM employee for payroll and benefit purposes:

> Question: When did you realize or become aware of the fact, as you put it in your complaint, you were employed by Blue Cross Blue Shield for purposes of payroll and benefits but in all other respects you worked for Aspen?
>
> Plaintiff: I was never not cognizant of that fact.

(Friedman Aff. Exh. A at 18.) That plaintiff knew that her pension benefits would derive from BCBSM rather than Aspen before the four-year joint venture began is further evidenced by the fact that plaintiff helped negotiate, draft and review the various joint venture agreements setting forth this arrangement. *Id.* at 37-38, 40-44.[4]

This case is controlled by *Union Pac. R.R. Co. v. Beckham*, 138 F.3d 325, 331 (8th Cir. 1998). In *Beckham*, the company for which the aggrieved claimants had worked, the Missouri-Kansas-Texas Railroad Company ("MKT"), was purchased by Union Pacific ("UP"). *Id.* at 327. After the Interstate Commerce Commission ("ICC") approved the acquisition in May 1988 but prior to UP assuming control of MKT on August 12, 1988, MKT employees were given the option of either accepting a voluntary severance package from MKT or becoming UP employees as of the acquisition date. *Id.* UP explained in

---

[4] Plaintiff testified that she reviewed the provisions relating to employee benefits. *Id.* at 37-38. She also testified that she was concerned about the transferred employees' pension benefits from the start of the join venture. *Id.* at 18-21.

three open meetings and through distributed fact sheets that if an MKT employee chose the latter option, "they would cease to accumulate "Credited Service" under the MKT Plan as of the acquisition date . . . [and] would begin accumulating "Credited Service" under the UP plan but would not receive any "Credited Service" under the UP Plan for their pre-acquisition MKT service." *Id.* at 327-28. Nonetheless, several MKT employees declined to accept the severance package and chose to become UP employees on August 12, 1988. *Id.* at 328. In 1994, these employees brought an ERISA action, claiming they were improperly denied pension benefits as a result of UP failing to provide them with service credit for their years of service with MKT. *Id.* The Eighth Circuit held that the claimants' action was time-barred because they had been notified in 1988 that they would not receive MKT service credit under the UP plan:

> As of August 1988, the UP Parties had clearly and unequivocally informed the claimants that their pre-acquisition MKT service would not count as "Credited Service" under the UP Plan and that their post-acquisition UP service would not count as "Credited Service" under the MKT Plan. The claimants, at that time, believed that this allocation scheme was "unfair" and improper . . . . Because the claimants did not file their counterclaim until 1994, these counts are time-barred under the applicable five-year statute of limitations . . . .

*Id.* at 331-332; *see also Bennett*, 141 F.3d at 839 (plaintiff's ERISA benefits claim accrued on date of resignation where plan administrators told plaintiff by letter he forfeited any credit and interest accumulated in pension plan upon resignation; plaintiff had a copy of the plan booklet containing the forfeiture clause; and plaintiff had been told by several of his superiors that he would forfeit benefits upon resignation); *Kienle v. Hunter Eng'g Co.*, 24 F. Supp. 2d 1004, 1006-07 (E.D. Mo. 1998) (claim accrued on

plaintiff's ERISA benefits claim when plaintiff signed agreement designating him an independent contractor and not an employee).

In this case, plaintiff was clearly informed from the start of the joint venture that, although she might work in all respects for Aspen, she was a BCBSM employee and that her pension benefits would come from BCBSM, not Aspen. Even viewing the facts in the light most favorable to plaintiff, the record reveals that plaintiff knew by early 1997, at the latest, that BCBSM's pension benefits were less generous than Aspen's. (Friedman Aff., Exh. A at 24-25, 54-55, 102-04, 107-08, 112-13.)[5] However, even under the 1997 date, plaintiff's commencement of this action in January 2000 still falls outside the two-year limitations period. For these reasons, the Court concludes that plaintiff's ERISA claim is time-barred and accordingly grants defendant's motion for summary judgment.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel, and the entire file and proceeding herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 45] is **GRANTED** and plaintiff's

---

[5] The relevant portion of the deposition provides:

> Question: At what point in time did you become aware that personally you were going to have different benefits as a Blue Cross Blue Shield employees?
>
> Answer: Probably end of '94, beginning of '95. Definitely by the time we were doing the Fairview merger we had a good sense that there was a significant diminishment of our benefits, and that would have been the end of '96, early '97.

*Id.* at 24-25.

ERISA claim as stated in Count 2 of the complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Sept 14 2001
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.